[Cite as *Helfrich v. Allstate Ins. Co.*, 2013-Ohio-4335.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| James C. Helfrich, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 12AP-559 |
| | | (C.P.C. No. 11CVH-06-7724) |
| Allstate Insurance Company, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 30, 2013

*Christopher M. Corrigan*, for appellant.

*Crabbe, Brown & James LLP*, and *Daniel J. Hurley*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Plaintiff-appellant, James C. Helfrich ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Allstate Insurance Company ("appellee"). For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The underlying facts of this case began in 2007, when appellant commenced a civil action against various defendants in the Licking County Court of Common Pleas. In April 2007, the Licking County defendants filed a counterclaim against appellant seeking a declaration that appellant was a vexatious litigator pursuant to R.C. 2323.52. Appellant forwarded a copy of the counterclaim to appellee seeking coverage under two

separate policies of insurance. Appellee denied coverage and refused to provide appellant with a defense in the Licking County action.

{¶ 3} On March 4, 2011, the trial court entered judgment against appellant on the counterclaim and declared him to be a vexatious litigator as defined in R.C. 2323.52(A)(3). In its judgment entry, the trial court expressly retained jurisdiction of Licking County defendants motion for frivolous conduct. Appellant subsequently dismissed his complaint pursuant to Civ.R. 41(A). On August 19, 2011, the trial court ruled that appellant had engaged in frivolous conduct and ordered appellant to pay the Licking County defendants' attorney fees in the amount of $118,451.08.

{¶ 4} Appellant subsequently brought the instant action against appellee in the Franklin County Court of Common Pleas, seeking a declaration that appellee had a contractual duty to indemnify and defend him in the Licking County action, pursuant to a policy of insurance. Appellant also asserts claims for damages sounding in breach of contract and bad faith.

{¶ 5} The facts of the case being undisputed, the parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of appellee and denied appellant's motion for summary judgment. In so doing, the trial court determined that appellee did not owe a duty to provide either a defense or indemnification to appellant in the Licking County litigation. The trial court also determined that the denial of coverage was consistent with the policy terms and not in bad faith.

## II. ASSIGNMENTS OF ERROR

{¶ 6} Appellant appealed to this court from the judgment of the Franklin County Court of Common Pleas. Inasmuch as the two assignments of error present a single issue for review, we will consider them together. Appellant presents the following assignments of error for our review:

> I. THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.
>
> II. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

### III. STANDARD OF REVIEW

{¶ 7} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 8} Summary judgment is proper only when the party moving for summary judgment demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 9} An insurance policy is a contract between the insurer and the insured. *Ward v. United Foundries, Inc.,* 129 Ohio St.3d 292, 2011-Ohio-3176, ¶ 18, citing *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.,* 112 Ohio St.3d 482, 2006-Ohio-6551, ¶ 23. The rules of construction of an insurance contract are well-settled. *Heritage Mut. Ins. Co. v. Ricart Ford, Inc.*, 105 Ohio App.3d 261, 265-66 (10th Dist.1995), citing *German Fire Ins. Co. v. Roost*, 55 Ohio St. 581 (1897). The interpretation of that insurance contract is a question of law to be decided by a judge. *Erie Ins. Group v. Fisher*, 15 Ohio St.3d 380 (1984). Where language in a contract of insurance is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. *Guernsey Bank v. Milano Sports Ents.*, 10th Dist. No. 09AP-1015, 2011-Ohio-2162, ¶ 36. If a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321 (1984).

{¶ 10} Appellant seeks recovery under two policies of insurance with appellee: A Landlord Package policy, and a Personal Umbrella Package policy. The relevant

provisions of the two policies differ materially.  Accordingly, we will consider them separately:  The Landlord Package policy reads in relevant part as follows:

> **Losses We Cover Under Coverage X:**
> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay compensatory damages which an **insured person** becomes legally obligated to pay because of * * * **personal injury** * * * arising from a covered **occurrence**.
>
> * * *
>
> "**Personal injury**"—means damages resulting from:
>
> * * *
>
> c)  libel;  slander;  humiliation;  defamation  of  character; invasion of rights of privacy.

 (Emphasis sic.)

{¶ 11}  Appellant concedes that the counterclaim in the Licking County action does not include a prayer for monetary relief. Appellant argues, however, that appellee is required to provide a defense, even if there are no damages alleged, where the insured is sued as a result of a "personal injury," even if damages are not alleged.  Appellee argues that, the counterclaim does not state a claim that falls potentially or arguably within policy coverage and, hence, it had no duty to defend appellant.

{¶ 12}  An insurer's duty to defend is broader than and distinct from its duty to indemnify.  *Ohio Govt. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 2007-Ohio-4948, ¶ 19. The scope of the allegations in the pleading filed against the insured determines whether an insurance company has a duty to defend the insured.  *Id.*  The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage, but the insurer need not defend any action or claims within the complaint that are clearly and indisputably outside the contracted coverage.  *Id.* citing *Motorists Mut. Ins. Co. v. Trainor,* 33 Ohio St.2d 41 (1973).

{¶ 13}  The controlling language of the Landlord Package policy is the definition of "personal injury."  The policy specifically states that a personal injury "means damages." Accordingly, absent damages, a claim for relief sounding in libel, slander, humiliation, defamation of character, or invasion of rights of privacy, is not a personal injury as the

term is defined in the policy. In other words, damages are a necessary and indispensable element of every personal injury covered under the policy. There is simply no other reasonable interpretation of the policy.

{¶ 14} Likewise, there is no question that damages are unavailable in an action brought pursuant to the vexatious litigator statute. In distinguishing remedies available under the vexatious litigator statute from those available under the frivolous conduct statute, this court noted that R.C. 2323.51 (frivolous conduct) and R.C. 2323.52 (vexatious litigator) offer complementary remedies, but the remedies are not the same. *See Roo v. Sain*, 10th Dist No. 04AP-881, 2005-Ohio-2436, ¶ 15. Although the two statutes share the same definition of reprehensible conduct, R.C. 2323.51 allows attorney fees for past frivolous conduct in a civil action, while R.C. 2323.51 is a protective remedy in the form of a restriction on future frivolous filings. *Id.*

{¶ 15} To the extent that appellant argues that the damages requirement in the policy is satisfied by the attorney fees leveled against him for frivolous conduct, the court of appeals in *Siemientkowski v. State Auto. Mut. Ins. Co.,* 8th Dist. No. 87299, 2006-Ohio-4122, held that the award of costs and attorney fees imposed against insured's for frivolous conduct in a prior litigation do not constitute an "injury" covered by the insured's homeowner's insurance policy. *Id.* at ¶ 6. *See also Tejada-Hercules v. State Auto. Ins. Co.*, 10th Dist. No. 08AP-150, 2008-Ohio-5066 (there is a distinction in the law "between cases in which attorney fees are awarded as costs and those in which the fees are awarded as part of the aggrieved party's damages"). The court also stated that "frivolous conduct, is not akin to malicious prosecution, libel, slander or defamation for the purpose of this insurance policy." *Id.* Having determined that damages are a necessary and indispensable element of every "personal injury," and that damages are not available under the vexatious litigator statute, the court concludes that the counterclaim filed against appellant in the Licking County action does not state a claim that falls potentially or arguable within the coverage provided by the Landlord Package policy. Accordingly, appellee owed no duty to appellant under the policy to indemnify or defend appellant in the Licking County action. The Personal Umbrella Package policy contains the following provisions that are pertinent in this case:

**DEFENSE; SETTLEMENT; SUPPLEMENTARY PAYMENTS**

**Coverage - When We Pay**
**Allstate** will pay when an insured becomes legally obligated to pay for **personal injury, property damage** or **bodily injury** caused by an **occurrence**.

Allstate will defend an **insured** if sued as the result of an **occurrence** covered by this policy even if the suit is groundless, false or fraudulent.

"**Occurrence**" - means * * * [a]n **occurrence** includes **personal injury, property damage** and **bodily injury** caused by an **insured** while trying to protect persons or property from injury or damage

"**Personal injury**" - means:

* * *

b) libel; slander; misrepresentation; humiliation; defamation of character; and invasion of rights of privacy.

(Emphasis sic.)

{¶ 16} Appellant argues that the counterclaim filed against him in the Licking County action states a claim for defamation which falls within the definition of "personal injury." Appellant relies on the following paragraphs of the counterclaim in support of that argument:

6. James Helfrich ("Helfrich") is a resident of Licking County, Ohio, who also owns the real property commonly known as 185 Isaac Tharp Street, Pataskala, Ohio (the"Property").

* * *

8. On February 9, 2004, Helfrich initiated a lawsuit against Strickland, Garner, and Coldwell Banker King Thompson in the Licking County Municipal Court, Case No. 04-CVF-00225 ... pertaining to Helfrich's alleged "excessive damage and repair costs" to the Property.

* * *

12. On January 27, 2005 Helfrich initiated a lawsuit against Strickland, Garner, and Coldwell Banker King Thompson in the Licking County Court of Common Pleas Court, Case No. 05-CV-0120 ... also pertaining to Helfrich's alleged "excessive damage and repair costs" to the Property.

* * *

16. In blatant contravention of Ohio Civ.R. 11 and in violation of O.R.C. 2323.52, Plaintiff's pleadings in the Municipal Litigation and the Common Pleas Litigation have contained "scandalous and indecent material" and Helfrich has engaged in conduct that obviously serves to harass or maliciously injure another party, ...

* * *

36. On January 3, 2007, Helfrich filed a document in Licking County Common Pleas Court Case No. 05-CV-0018, which he allegedly faxed "to the Judges of Licking County" ... that contains at least the following "scandalous and indecent matter":
**a.** While I could go on and on with examples, ***all of you know that attorney's professions are built on lies, and/or misleading facts.*** You operate in a court system where there is no civil repercussion for person who lie under oath, ***or attorney's who can be proven that they encourage their client to lie*** cannot be sued civilly.
**b.** Most recently, I have been involved in litigation ***with one attorney for more than two years, the docket is filled full of twisted facts or blatant lies***.
* * * *

37. Helfrich did not send a copy of the January 3, 2007, letter to Madison even though such letter not-so-indiscreetly references the Common Pleas Litigation and <u>false accusations about Madison</u>.

* * * *

39. A cursory review of *James Helfrich v. Sherri Mellon* ... demonstrates Helfrich (*sic*) disrespect for the judicial system and his inclusion of "scandalous and indecent material" in his pleadings: . . .

* * * *

> 42. Helfrich's conduct throughout the Municipal Litigation, the Common Pleas Litigation, the case *sub judice*, and other litigation serves merely to harass or maliciously injure Counterclaimants and other parties in violation of O.R.C. 2323.52.

(Emphasis sic.) (Appellant's brief, 1-3.)

{¶ 17} Unlike the Landlord Package policy, the Personal Umbrella Package policy does not specifically state "personal injury means damages." However, as noted above, the duty to defend arises only when the pleading filed against the insured potentially or arguably falls within the liability insurance *coverage. Harrison; Trainor.* The Personal Umbrella Package policy employs the phrase "when we pay" in defining the limits of liability insurance coverage. Accordingly, liability insurance coverage is tied inextricably to instances where the insured may be legally required to pay damages. The policy employs the phrase "*occurrence* covered by this policy" in defining the limits of appellee's duty to defend. Thus, the duty to defend is also tied inextricably to instances where the insured may be legally required to pay damages.

{¶ 18} Appellant contends that the duty to defend arises whenever the insured is sued for a "personal injury," even though the pleading does not seek payment. In other words, appellant believes that the duty to defend arises even though the alleged personal injury does not invoke liability insurance coverage. Such a reading ignores the plain language of the policy limiting appellee's duty to defend to an "occurrence covered by this policy."

{¶ 19} Thus, the court finds that, in the absence of a prayer for damages, the counterclaim filed in the Licking County action did not state a claim against appellant that arguably or potentially fell within the coverage provided by the Personal Umbrella Package policy. Accordingly, appellee did not owe appellant a duty to defend him in the Licking County action.

{¶ 20} Moreover, even if the court were to accept appellant's argument that the duty to defend under the Personal Umbrella Package policy arises whenever the insured is sued for a personal injury, the court finds that the counterclaim filed in Licking County does not allege a personal injury.

{¶ 21} There is no question that the counterclaim alleged a meritorious claim under the vexatious litigator statute. Indeed, the court of appeals affirmed the trial court judgment against appellant on the counterclaim. *See Helfrich v. Madison*, 5th Dist. No. 11 CA 26, 2012-Ohio-551. The specific question raised by this appeal is whether the counterclaim also alleges a claim for defamation.

{¶ 22} As noted above, the insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. *Harrison; Trainor.* In undertaking the analysis, this court will not stretch the allegations beyond reason in order to impose a duty on the insurer. *Hahn's Elec. Co. v. Cochran*, 1oth Dist. No. 01AP-1391, 2002-Ohio-5009. Nor will we impose a duty to defend based on allegations outside the complaint, where the allegations in the complaint are not vague or ambiguous and do not state a claim potentially or arguably within policy coverage. *Id.* The court will relieve appellee of its duty to defend only if the claim(s) alleged in the pleadings are clearly and indisputably outside the contracted coverage. *Harrison; Trainor.*

{¶ 23} In *Roo*, we observed that " ' "[t]he purpose of the vexatious litigator statute is clear. It seeks to prevent abuse of the system by those persons who persistently and habitually file lawsuits without reasonable grounds and/or otherwise engage in frivolous conduct in the trial courts of this state. Such conduct clogs the court dockets, results in increased costs, and oftentimes is a waste of judicial resources-resources that are supported by the taxpayers of this state. The unreasonable burden placed upon courts by such baseless litigation prevents the speedy consideration of proper litigation." ' " *Id.* at ¶ 6, quoting, *Mayer v. Bristow,* 91 Ohio St.3d 4, 13 (2000), quoting *Cent. Ohio Transit Auth. v. Timson,* 132 Ohio App.3d 41, 50 (10th Dist.1998).

{¶ 24} In *Mehta v. Ohio Univ.*, 194 Ohio App.3d 844, 2011-Ohio-3484 (10th Dist.), we set forth the elements of a claim for defamation:

> (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

(Citations omitted.) *Id.* at ¶ 26

{¶ 25} The vexatious litigator statue vindicates the right of the courts and the taxpayers of this state to be free from the delay and expense associated with baseless litigation, whereas common-law defamation vindicates an individual's right to be free from false statements that injure the individual's character or reputation. *See id.* The two claims are nothing alike.[1]

{¶ 26} Moreover, to the extent that the counterclaim attributes any "statements" to appellant, such statements pertain largely to lawyers and judges who were not parties in the Licking County action. With the single exception of the statements about "Madison" referenced in paragraph 37 of the counterclaim, it is impossible to tell from the counterclaim what the "scandalous and indecent material" consists of and whether any of it pertains to parties in that action. Similarly, there is no detail provided about the alleged "false accusations about Madison" referenced in paragraph 37. It is only by innuendo that one can deduce that Madison is a target of the allegations of dishonesty made in paragraph 36.

{¶ 27} Under Ohio law, when a complaint alleges defamation per se, damages are presumed, but when a complaint alleges defamation per quod, the complaint must allege special damages. *Williams v. Gannett Satellite Information Network, Inc.,* 162 Ohio App.3d 596, 2005-Ohio-4141, ¶ 7 (1st Dist.). Defamation per se occurs when a statement is defamatory on its face; defamation per quod occurs when a statement is defamatory through interpretation or innuendo. *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.,* 81 Ohio App.3d 591, 601 (9th Dist.1992), citing 3 Restatement of the Law 2d, Torts, Section 558, at 155 (1977). As the court has noted, there is no prayer for damages in the counterclaim. Thus, the only properly pleaded claim in the counterclaim is appellee's vexatious litigator claim.

{¶ 28} In *Montgomery v. Ohio St. Univ.,* 10th Dist. No. 11AP-1024, 2012-Ohio-5489, ¶ 13, we were required to determine whether a pleading stated a claim sounding in

---

[1] *Compare Siemientkowski* at ¶ 6 (frivolous conduct "is not akin to * * * defamation," for purposes of liability coverage); *William J. Templeman Co. v. Liberty Mut. Ins. Co..,* 316 Ill.App.3d 379 (1st Dist.2000) (In the context of homeowners' insurance, there was no possibility that judicially imposed sanctions for frivolous conduct would support recovery for malicious prosecution.).

negligence or a claim sounding in defamation for purposes of the statute of limitations. This court relied on the following guiding principle in making the determination: " ' "[C]ourts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." ' "  *Id.*, quoting *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988), quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, (1984).

{¶ 29}   Although the counterclaim at issue in this case contains certain words and phrases that might also appear in a pleading alleging defamation, the actual nature and subject matter of the counterclaim is the vexatious litigator statute.  The counterclaim clearly and unambiguously seeks a declaration that appellant is a vexatious litigator pursuant to R.C. 2323.52.  The counterclaim does not allege defamation.  The context in which the allegations of the counterclaim are framed, including the prayer for declaratory relief and the absence of a prayer for damages, the court can come to no other conclusion. We will not stretch the allegations of the counterclaim beyond reason to impose a duty on appellant in this case.  *See Hahn's Elec. Co.*

{¶ 30}  Based on the foregoing, we find that appellee was justified in denying coverage under the Personal Umbrella Package policy and in refusing to defend appellant. Having determined that appellee was justified in refusing to defend or indemnify appellant under either of the policies at issue, appellee is entitled to judgment as a matter of law on appellant's claims for breach of contract and bad faith.  *See Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994).

{¶ 31}  In short, the trial court did not err in granting appellee's motion for summary judgment and by denying appellant's motion for summary judgment.  Therefore, appellant's first and second assignments of error are overruled.

## IV.  DISPOSITION

{¶ 32}   Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

————————————————