[Cite as *Cleary v. Nationwide Mut. Ins. Co.*, 2026-Ohio-571.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jan Cleary et al., | : | |
| Plaintiffs-Appellants, | : | No. 25AP-226 |
| | | (C.P.C. No. 22CV-8372) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Nationwide Mutual Insurance Company et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on February 19, 2026

**On brief:** *Murray & Murray Co., L.P.A., Florence A. Murray*, and *Joseph A. Galea*, for appellants. **Argued:** *Florence A. Murray.*

**On brief:** *Teetor Westfall, LLC, J. Stephen Teetor, Scyld D. Anderson*, and *Sarah A. Lodge*, for appellees. **Argued:** *Sarah A. Lodge.*

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Plaintiff-appellant, Jeffrey Cleary, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for partial summary judgment and granting the motion for summary judgment filed by defendants-appellees, Nationwide Mutual Insurance Company and Allied Property & Casualty Insurance Company (collectively "Nationwide").[1] For the following reasons, we reverse and remand.

---

[1] Nationwide Mutual Insurance Company and Allied Property & Casualty Insurance Company are affiliated.

## I. Facts and Procedural History

{¶ 2}   In this insurance coverage dispute, the underlying facts are as follows. Jan Cleary is Jeffrey Cleary's mother. In September 2020, Jan renewed an auto policy and an umbrella policy with Nationwide. The auto policy identifies Jan as the only "Policyholder (Named Insured)," and she and Jeffrey, along with two others, are identified as "Rated Driver(s)." (Sept. 9, 2020 Nationwide Auto Policy at 1-2.) The umbrella policy identifies Jan as the only "Policyholder (Named Insured)." On December 26, 2020, Jeffrey was injured in an auto accident while driving his girlfriend's vehicle in California, where Jeffrey had resided since 2011. Jeffrey later collected the policy limits from the tortfeasor's liability insurance carrier. Both Jan and Jeffrey requested that Nationwide provide underinsured motorist ("UIM") coverage benefits in connection with the auto accident, but Nationwide denied the claim.

{¶ 3}   In February 2023, Jan and Jeffrey filed an amended complaint against Nationwide asserting claims for bad faith, breach of contract, and declaratory judgment as to Nationwide's obligations under the insurance policies. They alleged, inter alia, that they both were entitled to UIM coverage under the auto and umbrella policies. Nationwide filed an answer and counterclaim seeking a declaratory judgment that neither Jan nor Jeffrey were entitled to UIM coverage or any other benefits under the auto policy in connection with the December 26, 2020 auto accident, and that Jan and Jeffrey's failure to cooperate precluded any available coverage under the auto policy. The counterclaim did not seek a declaratory judgment concerning the umbrella policy.

{¶ 4}   In December 2023, Nationwide filed separate motions for summary judgment concerning Jan and Jeffrey's claims. In the summary judgment motion as to Jeffrey's claims, Nationwide argued Jeffrey was not entitled to UIM coverage under either policy because he was not a resident living with Jan at the time of the auto accident, and, thus, any claim based thereon failed. In the summary judgment motion concerning Jan's claims, Nationwide argued her claims failed because she had no coverage under the policies as to the auto accident, nor did she sustain any compensable damages under Ohio law.

{¶ 5}   In February 2024, Jan and Jeffrey filed a Civ.R. 41(A)(1)(a) voluntary notice of dismissal of their claims against Nationwide. This dismissal rendered as moot Nationwide's motions for summary judgment. Even though Jan and Jeffrey's claims were

dismissed, Nationwide's counterclaim for declaratory judgment remained pending. In July 2024, Nationwide filed separate motions for summary judgment regarding its counterclaim against Jan and Jeffrey.

{¶ 6} In August 2024, Jan and Jeffrey moved for partial summary judgment as to Nationwide's counterclaim on the issue of whether they failed to satisfy conditions precedent to coverage under the policy. They argued that no evidence supported Nationwide's allegation that they failed to cooperate, or that any failure of theirs to cooperate was prejudicial to Nationwide. They thus contended that Nationwide was not entitled to the requested declaration that any available coverage under the policies was precluded because of their failure to cooperate.

{¶ 7} In February 2025, the trial court granted Nationwide's motions for summary judgment as to Nationwide's counterclaim for declaratory judgment against Jan and Jeffrey, and it denied Jan and Jeffrey's motion for partial summary judgment as to Nationwide's counterclaim. The court entered judgment in favor of Nationwide as to all claims within its counterclaim for declaratory judgment.

{¶ 8} Jeffrey timely appeals.[2]

## II. Assignments of Error

{¶ 9} Jeffrey assigns the following two assignments of error for our review:

> [I.] The trial court erred in granting Appellees' motion for summary judgment.

> [II.] The trial court erred in denying Appellant['s] motion for [partial] summary judgement.

## III. Discussion

### A. Jeffrey's First Assignment of Error – Trial Court's Granting of Nationwide's Summary Judgment Motion

{¶ 10} Jeffrey's first assignment of error alleges the trial court erred in granting Nationwide's motion for summary judgment. This assignment of error has merit.

#### 1. Standards of Review

{¶ 11} An appellate court reviews summary judgment under the de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2021-Ohio-3898, ¶ 9 (10th Dist.). De

---

[2] Although both Jan and Jeffrey are named as appellants on the notice of appeal, only Jeffrey is a party in interest in this appeal because the trial court's determination that Jan is not entitled to coverage is not challenged.

novo review means the reviewing court independently analyzes the record while giving no deference to the trial court's decision. *Johnson v. Am. Italian Golf Assn. of Columbus*, 2018-Ohio-2100, ¶ 13 (10th Dist.).

{¶ 12} Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 1997-Ohio-221.

{¶ 13} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 1996-Ohio-107. However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 1997-Ohio-259. Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at ¶ 17; *Vahila* at ¶ 19; Civ.R. 56(E).

## 2. Analysis

{¶ 14} The primary issue raised by Jeffrey's first assignment of error is the applicability of the UIM coverage provision of the auto policy. A court's determination as to the meaning of a written contract is a question of law. *State v. Fed. Ins. Co.*, 2005-Ohio-6807, ¶ 22 (10th Dist.), citing *Long Beach Assn., Inc. v. Jones*, 1998-Ohio-186. An insurance policy is a contract between the insurer and the insured. *Helfrich v. Allstate Ins. Co.*, 2013-Ohio-4335, ¶ 9 (10th Dist.). Thus, courts interpret insurance policies in accordance with the same rules applied in interpreting other types of contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992).

{¶ 15} The purpose of contract construction is to realize and give effect to the parties' intent. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the

syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. The court must read words and phrases in context and apply the rules of grammar and common usage. *Keller v. Foster Wheel Energy Corp.*, 2005-Ohio-4821, ¶ 14 (10th Dist.). Thus, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 16} "When provisions of an insurance policy are reasonably susceptible to more than one interpretation, we must construe them strictly against the insurer" and "adopt any reasonable construction that results in coverage for the insured." *State Farm Mut. Auto. Ins. Co. v. Gourley*, 2012-Ohio-4909, ¶ 12 (10th Dist.), citing *Faruque v. Provident Life & Acc. Ins. Co.*, 31 Ohio St.3d 34, 38 (1987), and *Emps. Reinsurance Corp. v. Worthington Custom Plastics, Inc.*, 109 Ohio App.3d 550, 558-559 (10th Dist. 1996). *See Smith v. Nationwide Mut. Ins. Co.*, 37 Ohio St.3d 150 (1988) (because insurance policies are often contracts of adhesion, ambiguities are construed liberally in favor of the insured).

{¶ 17} At issue is whether Jeffrey is an "insured" under the UIM coverage provision of the auto policy in connection with the auto accident on December 26, 2020. Pursuant to this provision, Nationwide agreed to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury' . . . [s]ustained by an 'insured' . . . and . . . [c]aused by an accident." (Nationwide Auto Policy-UIM Coverage – Ohio at 1.) For the purpose of this provision, the auto policy defines "insured" as:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

(Emphasis deleted.) *Id.* The policy defines "you" as the " 'named insured' shown in the Declarations," the "spouse if a resident of the same household," and the "civil partner of the named insured" or a "[d]omestic partner." (Nationwide Auto Policy – Personal Auto Policy,

Definitions at A.) The policy identifies the "Policyholder (Named Insured)" as Jan Cleary. And for this purpose, a "[f]amily member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." *Id.*, Definitions at F.

{¶ 18} It is undisputed that Jeffrey was neither a "named insured" nor a "family member" (as he was not residing with Jan at the time of the accident), nor was he "occupying" a "covered auto," at the time of the auto accident. Jeffrey was, however, identified, along with Jan, as one of the auto policy's four "rated drivers." (Nationwide Auto Policy at 2.) Although the auto policy identifies these four individuals as "rated drivers," the policy does not define that term. Jeffrey argues the absence of such a definition creates ambiguity as to the scope of UIM coverage for the identified "rated drivers." Alternatively, Jeffrey argues the policy should be reformed to reflect the true intent of the contracting parties to provide UIM coverage to him. Conversely, Nationwide argues that there is no ambiguity because it was not necessary for the policy to define "rated driver" because "you" and "insured" are defined for the purpose of the UIM coverage provision, and that reformation is not appropriate in this matter.

{¶ 19} We find our decision in *Jensen v. State Auto. Mut. Ins. Co.*, 2005-Ohio-4354 (10th Dist.), to be controlling as to this coverage dispute. In *Jensen*, this court was faced with essentially the same issue as involved in the case at bar, as the party seeking UIM coverage, Mark Jensen, was identified as an "additional driver," but not a "named insured," on the declarations page. *See id.* at ¶ 9. The named insureds on the policy were Mark's parents, Galen and Patricia Jensen. The State Auto policy defined "insured" for the purpose of UIM coverage in the same manner as in the case at bar, and Mark Jensen, like Jeffrey, was not a named insured or spouse of the named insured ("you"), and he was not "occupying" a "covered auto." *Id.* at ¶ 19. This court noted, however, that an "additional driver" was neither defined nor assigned any coverage limits in the policy. *Id.* at ¶ 23. This court resolved that the policy was ambiguous because it did not define what coverage was available to additional drivers listed on the policy. *Id.* And "[c]onstruing the policy in favor of [the party seeking coverage]," this court found that Mark Jensen, "as an 'additional driver,' qualified as an 'insured' under the State Auto policy." *Id.*

{¶ 20} Nationwide argues *Jensen* is distinguishable because there was evidence in that case showing that the party seeking UIM coverage, Mark Jensen, resided at his parents' (the named insureds) household, and thus was a "family member" "insured" under the State Auto policy. We disagree. In *Jensen*, while the trial court found coverage based on residency—which was disputed—this court expressly did not reach that issue. Instead, as set forth above, this court addressed the issue of whether there was coverage for Mark Jensen because he was identified as a "driver," in addition to the named insureds, on the policy's declarations page. *Id.* at ¶ 4, 23. Consequently, this court left as unresolved the disputed issue of whether Mark Jensen was a "family member" under the policy based on this court's conclusion that his status as an "additional driver" on the policy declarations page meant he was an "insured" for the purpose of UIM coverage. *See id.*

{¶ 21} Here, Jeffrey is identified on the declarations page as a "rated driver," along with Jan and two others, but that term—like the listing of "additional drivers" in *Jensen*—is undefined. We see no substantive difference between the Nationwide policy's use of "rated drivers" and the State Auto policy listing a person as an "additional driver" to identify all drivers for whom the insurance premium was calculated and paid, not just the one or more "named insureds." Thus, as in *Jensen*, the coverage for "rated drivers" on the declarations page of the auto policy is ambiguous. Following *Jensen*, we must construe the policy in favor of Jeffrey and find that he is an "insured" under the policy for the purpose of UIM coverage. Based on this finding, it is unnecessary to address Jeffrey's alternative argument that the policy must be reformed to reflect the parties' true intent.

{¶ 22} Next, we address the secondary issue raised by Nationwide's summary judgment motion—whether Nationwide presented any evidence to show that any UIM coverage for Jeffrey was precluded under the auto policy because he failed to cooperate with Nationwide.

{¶ 23} Regarding an insured's obligation to cooperate with Nationwide, the auto policy states that a "person seeking any coverage" must, inter alia, "[c]ooperate with [Nationwide] in the investigation, settlement or defense of any claim or suit," "[s]ubmit to a recorded interview and/or examination under oath as often as reasonably requested," and "[i]f injured, submit to examinations by company-selected physicians as often as the company reasonably requires." (Nationwide Auto Policy, Part E at 20.) As a "person

seeking coverage," Jeffrey was obligated to comply with these requirements. At his deposition, however, Jeffrey acknowledged that, despite Nationwide's request for an interview with him, he "did not speak with them." (Jeffrey Dep. at 70.) Nor does Jeffrey dispute that, despite being requested, he has not appeared for an independent medical examination. Thus, the record supported Nationwide's contention that Jeffrey did not comply with the cooperation requirement of the auto policy as to Nationwide's investigation of the claim arising from the December 26, 2020 auto accident.

{¶ 24} When an insured party fails to comply with a cooperation clause, " 'the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate.' " *Savage v. Am. Family Ins. Co.*, 2008-Ohio-4460, ¶ 21 (10th Dist.), quoting *Garbor v. State Farm Mut. Auto. Ins. Co.*, 66 Ohio App.3d 141, 143 (8th Dist. 1990). However, "[w]hether the insurer is relieved of further obligation depends on the prejudice to the insurer resulting from the information that is withheld." *Id.* "To constitute a defense to liability, an insured's lack of cooperation must result in material and substantial prejudice to the insurance company." *McCruter v. Travelers Home & Marine Ins. Co.*, 2021-Ohio-472, ¶ 94 (11th Dist.).

{¶ 25} Nationwide argues it was materially prejudiced by Jeffrey's failure to cooperate because the failure impeded its investigation into Jeffrey's residency at the time of the auto accident.[3] Nationwide asserts that if Jeffrey had in fact resided with Jan at the time of the accident, he would have been a "family member," and therefore an "insured," under the UIM coverage provision. From Nationwide's perspective, the uncertainty as to Jeffrey's residence meant there remained the possibility that Jeffrey was entitled to coverage under the auto policy. But this does not show material prejudice. The delay simply kept this issue unresolved until the parties engaged in formal discovery during litigation. Even if this issue had been clarified earlier, by Jeffrey's acknowledgment or otherwise, it would have made no difference in Nationwide's continued denial of Jeffrey's claim for UIM coverage. Thus, Nationwide presented no evidence in support of its claim that UIM coverage for Jeffrey was precluded because it was materially prejudiced by his lack of cooperation.

---

[3] Nationwide does not argue that Jeffrey's failure to appear for an independent medical examination materially prejudiced it.

{¶ 26} Because the trial court erred in granting Nationwide's motion for summary judgment as to the counterclaim against Jeffrey, we sustain Jeffrey's first assignment of error.

### B. Second Assignment of Error – Jeffrey's Motion for Partial Summary Judgment

{¶ 27} Jeffrey's second assignment of error alleges the trial court erred in denying his motion for partial summary judgment on the issue of whether any UIM coverage for him is precluded by his alleged failure to cooperate. As discussed above, Nationwide did not present any evidence to support its claim that it was materially prejudiced by Jeffrey's failure to cooperate. Consequently, we find the trial court erred in denying Jeffrey's motion for partial summary judgment and, therefore, sustain his second assignment of error.

## IV. Disposition

{¶ 28} Having sustained Jeffrey's first and second assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, insofar as it relates to coverage for Jeffrey, and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed in part;*
*cause remanded.*

MENTEL and LELAND, JJ., concur.

————————————